UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| ACUITY BRANDS LIGHTING, INC., et al., ) ) ) | |
| Plaintiffs, ) ) | No. 5:13-CV-366-DLB-REW |
| v. ) ) | RECOMMENDED DISPOSITION[1] |
| SHANE BICKLEY, et al., ) ) | |
| Defendants. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendants move, pursuant to Fed. R. Civ. P. 37(c), to exclude certain damages-related evidence, in effect to modify the damage field in the case. DE #107 (Motion). Plaintiffs ("Acuity") responded. DE #140 (Response). Defendants replied. DE #156 (Reply). The matter is ripe for consideration. The Court has analyzed the full briefing and all exhibits. For the following reasons, and on the following specific terms, the Court **RECOMMENDS** that the District Court **GRANT** DE #107. Plaintiffs, as the parties here always in possession of all damages evidence, improperly failed to detail their damage claims, warranting preclusion.

In discovery, a party must disclose "a computation of each category of damages claimed" as well as make available "the documents or other evidentiary material . . . on

---

[1] The Court issues this ruling as a Recommended Disposition due to the potentially claim-specific dispositive or preclusive nature of Defendants' motion. *See, e.g.*, *Gagnon v. Teledyne Princeton, Inc.*, 437 F.3d 188, 199 (1st Cir. 2006) (referring to the district court's 37(c)(1) ruling as dispositive); *see also Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 369 (6th Cir. 2010) ("[T]he district court did not abuse its discretion in excluding evidence of lost-profits damages and, because it had no evidence of lost profits left to consider, granting summary judgment[.]"). This preserves the parties' rights to *de novo* review by the District Court.

1

which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]" Fed. R. Civ. P. 26(a)(1)(A)(iii). Further, a "party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process[.]" *Id.* 26(e)(1)(A). "If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id.* 37(c)(1). The Court may order additional or substitute sanctions. *Id.* 37(c)(1)(A)-(C). Judge Forester entered the original Scheduling Order in this case on January 29, 2014, DE #26, and discovery ultimately closed on April 17, 2015, some sixteen months after Acuity filed its complaint. DE #70 (Order).

The test for Rule 37(c) exclusion "is very simple: the sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Bessemer*, 596 F.3d at 370.[2] "Rule 37(c)(1) authorizes the trial court to exclude evidence that was withheld in violation of Rule 26(a) or (e). The party requesting exclusion under Rule 37(c)(1) need not show prejudice, rather the non-moving party must show that the exclusion was 'harmless' or 'substantially justified.'" *Saint Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 666 F. Supp. 2d 820, 826 (N.D.

---

[2] *Bessemer* requires robust damage-related production. Rule 26 requires "what [it] says"; it is insufficient to produce merely "enough evidence to put [Defendant] on notice" of a class or category of damages. 596 F.3d at 369. These contours make sense, given one of the Rule's aims: "Rule 26(a) generally serves to allow both sides to prepare their cases adequately and efficiently and to prevent the tactic of surprise from affecting the outcome of the case." *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 871 (6th Cir. 2007).

Ohio 2009). "The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004). "Once it is determined that a party violated Rule 26 by making several untimely disclosures, a Court may strike those disclosures unless the party to be sanctioned . . . can show that those disclosure[s] were either harmless or substantially justified." *Matilla v. S. Ky. Rural Elec. Coop. Corp.*, No. 6:04-380-DCR, 2006 WL 7128675, at *4 (E.D. Ky. Jan. 20, 2006). "The burden to prove harmlessness or substantial justification shifts to the party to be sanctioned once a violation of Rule 26 has been shown." *Id.* at *2.

An initial disclosure is deficient when it is "completely devoid of any dollar amounts or supporting information and/or documentation." *Scheel v. Harris*, No. 3:11-17-DCR, 2012 WL 3879279, at *4 (E.D. Ky. Sept. 6, 2012). Listing a "grand total" of damages "accompanied by no explanation of how such a figure was calculated" is likewise insufficient. *Id.*[3] When a party "d[oes] not disclose the dollar amount for its lost-profits claim in a timely manner," or if "the disclosure . . . lack[s] supporting documentation that would allow [the opposing party] to independently analyze the claim[,]" it also violates the Rule. *Id.* (internal quotation marks removed). An omission is harmless if it involves "an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Vance, by and Through Hammons v. United States*, 181 F.3d 920, at *5 (6th Cir. 1999) (table); *see also James T. Scatuorchio Racing*

---

[3] This, in substance, is what Sheffield (speaking for Acuity) did in his deposition: recite a "grand total" of an amount certain in damages but fail to detail the calculation or produce supporting documentation. DE #158-1, at 5.

3

*Stable, LLC v. Walmac Stud Mgmt., LLC*, No. 5:11-374-DCR, 2014 WL 1664263, at *10 (E.D. Ky. Apr. 25, 2014).

As the Federal Circuit has noted, in a comment that applies here, "[t]his case aptly demonstrates the pitfalls of playing fast and loose with rules of discovery. . . . [E]leventh hour disclosures . . . violate both the rules and principles of discovery, and the obligations lawyers have to the court. Exclusion [is an] appropriate consequence[] to avoid repeated occurrences of such manipulation of the litigation process." *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1376 n.4 (Fed. Cir. 2008) (finding no abuse of discretion in excluding discovery produced at the last minute, where Plaintiff "was stripped of any meaningful opportunity to prepare an adequate cross-examination" and calling such discovery behavior "inequitable conduct").[4]

As stated above, Rule 37(c)(1) "requires absolute compliance with Rule 26(a), that is, it mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified." *Marais v. Chase Home Fin., LLC*, 24 F. Supp. 3d 712, 730 (S.D. Ohio 2014). "The Civil Rules, however, are not so uncivil as to *automatically* punish a lack of detail in early disclosures with what amounts to default." *Id.* (emphasis added). Of course, Rule 37(c)(1) provides for "less draconian options" than preclusion. *Id.* The Rules and the unfolding discovery process give many opportunities to timely correct a prior inadequacy or seasonably supply equivalent information.

---

[4] Further, "the disclosure obligation should [not] be satisfied by cobbling together isolated documents produced during the entire course of discovery; without a document clearly entitled 'Damage Calculation,' plaintiffs risk . . . claims attacking their satisfaction of Rule 26's requirements." *Harper Enters., Inc. v. Aprilia World Serv. USA, Inc.*, No. 04-0139-CV-W-ODS, 2007 WL 295268, at *3 (W.D. Mo. Jan. 29, 2007).

4

Although Plaintiffs rely heavily on *Marais*, the Court finds it critically distinguishable. Because the parties in *Marais* were "not on the eve of trial and . . . still ha[d] ample opportunity . . . to conduct discovery and brief the issue of damages[,]" Defendant could not "seriously claim to be surprised by the origin of the damages Marais seeks." *Id.* at 731. Thus, although Plaintiff's "damages computation was missing from her Rule 26 disclosure," and although she "fail[ed] to specifically offer a break-down and computation of damages in a document exchanged early in discovery[,]" the court determined the defect to be harmless. *Id.* Here, on the other hand, while there is no trial date, discovery has long been closed. Defendants thus have no opportunity, much less an ample one, to conduct further discovery and brief the issue of damages as in *Marais*. Further, the court there detailed several pieces of evidence that the defendants possessed, showing a lack of surprise; here, on the other hand, and as discussed below at length, Defendants do raise valid surprise concerns related to eleventh-hour production and lack of prior knowledge. It is "hardly an abuse of discretion" to find clear prejudice regarding an "eleventh-hour filing of [a] damages calculation" that leaves the opposing party "with approximately one week to evaluate and rebut the information." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 224 (3d Cir. 2003).

*Analysis*

Acuity here should have had access to and early mastery of the full range of damage proof substantiating its claims. This is not a case where damage analysis called for third-party proof or the unfolding of expert or other discovery. For reasons not clear on this record, Plaintiffs simply did not formulate or finalize their theories until the very end of discovery. This is a backward sequence and undoubtedly blocked the defense from

5

adequate damage comprehension. The pervasive sense at the Sheffield deposition (and Sheffield was the Acuity damage designee) was that Acuity had not yet settled on how to measure or quantify its claims. If the damage designee could not explain the damage theories at this 30(b)(6), then the defense surely could not have effectively discovered that proof from him. Only unveiling the damage portrait in the last week, or on the last day, of discovery might have some dramatic effect, but that violates Rule 26, thwarts efficient case resolution, and demands a preclusive sanction from the Court.

    1.    Lost Profits

Acuity began discovery by stating in its Initial Disclosures on January 9, 2014, that it "[wa]s still in the process of calculating its actual damages." DE #107-2 (Initial Disclosures), at 4. It listed certain illustrative categories of damages that it anticipated claiming. *Id.* BAF followed up in interrogatories. Acuity maintained on June 2, 2014, that it "[wa]s still collecting data and information relevant to a final damages calculation." DE #107-3 (Responses to Interrogatories), at 3-4. Again, Acuity listed (but did not detail) certain demonstrative categories of damages. *Id.* Plaintiff promised that once it had "compiled all relevant data and information sufficient to calculate these damages, it will produce the same, as well as any additional underlying or supporting documents." *Id.* at 4. Acuity amended its initial disclosures on March 27, 2015—just 20 days before discovery ended—but provided no more detail and remained in its prior posture that "discovery has just begun[.]" DE #107-4 (Amended Initial Disclosures), at 4-5. The amendment did not alter the original damage disclosure.

6

On lost profits, Chad Sheffield[5] generally testified in a December 2014 deposition that Acuity's claim was to 15% of the shortfall of certain regional sales projections following Robinson's and Dantzler's departures. DE #109 (Sheffield Depo.), at 26. The stakeholders involved promised future explanatory documents. *E.g.*, *id.* at 10 (regarding recruitment and hiring costs, "we can provide documents later."); *id.* at 22 (on sales loss, "That's forthcoming. I don't have that data."); *id.* at 27 (regarding the 15%, "we've got to go look at the factors. . . . I don't have all the information."). Apparently, the only supplemental material provided was a one-page summary chart produced April 10, 2015—7 days before discovery ended and substantially after Sheffield's deposition.[6] *See* DE #112. This document provides no obvious basis for the 15% claim. Despite notice, DE ##107-5, at ¶¶ 26-29; 107-6, at ¶¶ 26-29, Sheffield did not meaningfully (and certainly not thoroughly) testify as to damages. Similarly, Geoffrey Marlow's testimony (at least as excerpted by Plaintiffs) offered nothing as to damage specifics. *See* DE #140-5.

The Court has read for itself all of the tendered pages from Sheffield's Rule 30(b)(6) deposition. The defense sought a witness who could speak for the corporation

---

[5] He was Acuity's damage proof designee. DE #140, at 4.

[6] Defendants do not provide proof—only argument and statements in the briefing—of the dates of disclosure regarding this and the other discovery at issue here. Plaintiffs, however, do not dispute the accuracy of the timing allegations. It is worth remembering that a party must ordinarily make this type of disclosure—an *initial* disclosure under the Rule—"at or within 14 days after the parties' Rule 26(f) conference[.]" Fed. R. Civ. P. 26(a)(1)(C). Supplementation must be "timely[.]" *Id.* 26(e)(1)(A). The parties conducted the 26(f) conference on January 9, 2014. DE #24, at ¶ 1. Discovery closed on April 17, 2015. DE #70. In the Court's view, absent unusual circumstances, supplementation of an initial disclosure requirement mere days before a 15-month discovery period ends is hardly timely. Indeed, just twenty days before the discovery cut-off, after fourteen months of discovery, Acuity still nominally claimed "discovery has just begun" and continued to avoid quantification of damages. DE #107-4, at 4-5.

7

about its damages. Acuity designated Sheffield, who also had verified prior discovery responses on damages. *See, e.g.*, DE #107-3 (Plaintiff's Objections and Responses), at 7. As to lost profits, Sheffield staked only the roughest contours of Acuity's theory: Acuity claimed that Robinson's departure effectively led to absence of leadership in two sales regions, and that those regions suffered gross profit losses (against projections) in 2013 Q4. Acuity blamed Robinson for 15% of the gross profit deficit. Though the 30(b)(6) designee, Sheffield did not have the profit "data." DE #110 (Sheffield Depo.), at 21. He pulled the 15% figure from the air, providing no reasoning to the attribution and proving himself utterly incapable of explaining the remaining 85% of claimed loss causation. *Id.* at 26 ("[W]e've got to go look at the factors. I don't have all the factors of what the 85% was.").

The later, single page spreadsheet undoubtedly raises more questions than it answers. Perhaps Sheffield can fit this into his analysis consistently, but BAF could not do so on the information it has. Indeed, the defense would be like Indiana Jones in the map room with only half of the engraved instructions. Unable to understand how Acuity distinguished or chose the regions, how it defined the loss, and how it landed on 15% blame against Robinson's departure, BAF would forever be digging in the wrong place.

"[A] computation of each category of damages claimed is expressly required by the [Rules.] Therefore, as *Bessemer* instructs, the plaintiffs' disclosure of the various classes of damages sought is not sufficient to satisfy their initial disclosure requirement. 596 F.3d at 367; *see also Poore v. Sterling Testing Sys., Inc.*, No. 6:04-CV-194-KKC, 2006 WL 273915, at *3 (E.D. Ky. Feb. 1, 2006) (excluding damages disclosed after close of discovery, which were calculated in a manner that was entirely different than the

8

calculation contained in the plaintiff's discovery responses)." *Scheel*, 2012 WL 3879279, at *4 n.5 (finding the omission was not harmless and granting the motion to exclude) (internal quotation marks removed). Again, the test for Rule 37(c) exclusion "is very simple: the sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Bessemer*, 596 F.3d at 370. Plaintiffs provided no reasonable explanation and do not show that the mistake was harmless. Indeed, Defendants were unable to conduct anything approaching full discovery on the alleged basis for lost profits damages, and the disclosure of DE #112—which hardly satisfies Rule 26's requirements in the first place—a week before discovery ended and well after Sheffield's deposition did not give Defendants a meaningful opportunity to explore the content of the claim. *See, e.g.*, *James T. Scatuorchio Racing*, 2014 WL 1664263, at *10 (excluding evidence that "would require the re-opening of discovery[ and] force the defendants to acquire rebuttal testimony"). The defense credibly asserts that it had and still has insufficient knowledge of the basis of a lost profits claim. *Vance*, 181 F.3d 920, at *5; *see also* DE #107-8 (3/11/15 Letter from Hunter to Gevertz, evidently producing no response, stating that the defense desired "supplemental questioning" of "an additional damages designee . . . to the extent that [Plaintiffs] intend to seek damages in this case"); *Bessemer*, 596 F.3d at 367-68 (cataloguing the defense's efforts to obtain damage-related discovery under similar circumstances, where "[Plaintiff's] initial disclosures gave few answers"; Plaintiff claimed broad categories of damages and produced a "one-page spreadsheet"; the defense "continued to demand lost-profits documentation"; "[s]ubsequent rounds of requests yielded little additional information" and the defense "continued to ask for supplementation on the issue of net

9

lost profits, without any significant response from" Plaintiff; and "[n]one of Bessemer's corporate representatives could" adequately testify even after "a detailed deposition notice").

Because Plaintiffs never provided a Rule-compliant computation of their alleged lost profits damages and supporting documents or evidentiary material substantiating even the bare detail they did provide, and because Plaintiffs have not proven that the violation was substantially justified or harmless, the Court **RECOMMENDS** that the District Court **GRANT** DE #107 regarding lost profits and **EXCLUDE** evidence of this category of damages under Rule 37(c)(1). Production sufficiently late in discovery does not satisfy the Rule. *See Bessemer*, 596 F.3d at 370 (upholding harm finding where a party's "delay . . . prevented [the opposing party] from exploring the basis of that claim during depositions and discovery").

There is an important conceptual choice here about remedy. The preclusion of Rule 37(c)(1) generally aims at barring evidence, not at whole claims. Acuity picks up on this and contends that BAF is seeking game bigger than the Rule targets. The Court considered simply barring Acuity from offering any proof beyond the state of the disclosure as of the end of the Sheffield deposition. The Court elected against that because of the steps Acuity itself later took and because Sheffield himself hedged so much at his own deposition. If Acuity viewed the proof as not sufficiently complete to stand on in December, the Court would be hard pressed to deem the proof adequate, measured now at that disclosure stage. The District Judge will need to draw these lines, but the Court recommends deeming the proof timely disclosed (*i.e.*, the proof as of the Sheffield deposition) as too uncertain to support the lost profit claim. The March 2015

disclosure still described that category—indeed all categories—as subject to definition by discovery, but discovery closed just after that characterization. Rule 37 expressly envisions, as a remedy for inadequate disclosure and supplementation, a 37(b)(2)(A) sanction prohibiting "the disobedient party from supporting . . . designated claims." *See* Fed. R. Civ. P. 37(c)(1)(C). The Court should not allow Acuity to pursue damages that it finally specified only past the point when BAF could question, understand, or fairly test the details. *Bessemer*, 596 F.3d at 369 (affirming district court "excluding evidence of lost-profits damages").

  2.  Replacement Costs

Plaintiffs provided a computation of replacement costs for Robinson and Dantzler at 9:34 p.m. on April 15, 2015—two days before discovery ended. *See* DE ##113, 116.[7] Supplementation must be "timely" under Rule 26(e). Generis, deposed on April 16, 2015, provided no further explanation of this document. DE ##114, at 4; 158-1, at 45-49 (*e.g.*, "Is this witness in the position to shed any light on [a damages claim with regard to the replacement of Robinson, Dansler [sic] and Kirkoff]?" "No."). Similarly, Sheffield provided no Rule 26-compliant recitation. *See* DE #158-1, at 3-15. Sheffield's responses were distinctly indeterminate. *E.g.*, *id.* at 3 ("We'll provide more detail to you[.]" "We'll review the numbers again and see." "I'll review the numbers[.]"); *id.* at 3-4 ("[R]ight now

---

[7] Acuity cites earlier produced employee offer letters in mitigation. *See, e.g.*, DE ##115; 142-2. As to specific damage amounts, these letters only identify individuals' annual base salary (as well as other offer specifics)—not a computation of damages. Plaintiffs also cite a document labeled "2012 IBEAM LED Development – Labor Costs". DE #140-6. The document in the record contains no cost information; the applicable rows are empty. Plaintiffs state they produced an unredacted version of the same document. DE #140, at 8 n.3. Plaintiffs, however, acknowledge that they produced "final detailed calculations at the end of the discovery period[.]" DE #140, at 12; *see also id.* at 6 ("during the last week of discovery").

I can give you the estimate we have at this point in time." "No documents?" "[W]e can provide documents later."); *id.* at 6 ("So that's part of the non-solicitation damages that we'll – that we'll submit to you."); *id.* at 7 ("That's forthcoming. I don't have that data.").

Plaintiffs' long failure to provide the computation and documents required by Rule 26, and their failure to timely supplement the disclosure requires preclusion. Plaintiffs admit they produced DE #113 "during the last week of discovery," DE #140, at 6, which is plainly insufficient under the standards. *E.g.*, *Ware*, 322 F.3d at 224 (one week to evaluate and rebut damages calculation was prejudicial). Plaintiffs, who have the burden, have not proven that the violation was substantially justified or harmless. Accordingly, and as articulated with respect to lost profits, the Court **RECOMMENDS** that the District Court **GRANT** DE #107 regarding replacement costs and **EXCLUDE** evidence of this category of damages under Rule 37(c)(1).

As to this and all categories at issue, a lesser sanction than exclusion is not adequate. Discovery was—and, in truth, still is—a hotly contested aspect of this litigation. Acuity started the case with a motion to expedite discovery. DE #3 (Motion). The parties required two discovery dispute calls. The Court adjudicated two motions to compel and a motion to quash. The Court extended the discovery period four times. The parties ultimately had nearly 15 months to conduct discovery. The parties squabbled over AEO and confidentiality designations, resulting in a particular remedy via Court order on a motion for sanctions. The designation fight remains ongoing. *See* DE #172 (Order deferring resolution of designation disputes until after dispositive motion ruling). The Court levied a fee award. The parties have—or should have—thoroughly plowed all relevant discovery ground. Here, given the extensiveness of discovery in this case and the

defense's inability to probe the relevant damage grounds due to Plaintiffs' eleventh-hour production, a mere fee award or jury advisement would insufficiently account for the Rule 26 and 37 values. No other (b)(2)(A) sanction fits in these circumstances. As the Sixth Circuit has directly told lower courts, in these circumstances, exclusion "is mandatory[.]" *Bessemer*, 596 F.3d at 370. Plaintiffs risked harsh Rule 37 sanctions when they failed to seasonably comply with Rule 26, waiting until the final days (and hours) of a 15-month discovery period to produce the items at issue here.

Again, Sheffield, as 30(b)(6) designee, did little more than provide a gross estimate and the vaguest contours of the basis for the number. He provided no documents, gave no particulars, and was unprepared on the calculative elements. A year into discovery, Acuity's speaker gave only his "estimate" and promised to provide documents "later." DE #110, at 8-9. He could not give complete information and was still processing the case—"We'll review the numbers and see." *Id.* at 8. The details came only as the curtain dropped on discovery, brinkmanship calling for preclusion by the Court.

    3.    Computer Expert Damages

Plaintiffs included a categorical reference to "costs" in their Rule 26 disclosure. DE #140-1, at 4. However, similar to the above, as to this category, Plaintiffs only provided detailed documentation at 6:30 p.m. on the last day of discovery. *See* DE #117. Plaintiffs admit that they did not provide unredacted copies of the Watts firm invoices containing claim-relevant information until August 12, 2015, well after the discovery deadline. DE ##140, at 8; 142-9. Whitaker, in deposition, generally described the forensic evaluation process, but he provided no details on damage amounts. DE #140-4, at 3-7. For the same reasons as above, due to the untimely production, and because Plaintiffs

13

have not proven that the violation was substantially justified or harmless, the Court **RECOMMENDS** that the District Court **GRANT** DE #107 regarding computer expert damages and **EXCLUDE** evidence of this category of damages under Rule 37(c)(1). It is not the adverse party's burden to chase down a claimant's supported and documented damage computation. A category documented on the last day of (or here after the close of) discovery risks a preclusive sanction. The record here contained inadequate proof to that point, and the Court should not allow Acuity to skirt the Rule and yet keep the claim.

    4.    Other Cost Categories

The Court finds the briefing as to "other damage" categories inadequate and thus recommends **DENIAL** of the motion insofar as it addresses damages beyond the three fixed categories here discussed. BAF made only a conclusory argument as to additional theories and essentially did not cite to the record as to those items. The adequacy, *e.g.*, of the IBL development cost proof simply is not determinate in the briefing—Acuity claims that is not within BAF's motion, but BAF in reply claims it is. *See* DE ##140 (Response), at 8 n.4; 156 (Reply), at 13. The Court can only assess what the parties properly present, and BAF has not justified relief on any categories beyond the lost profits, replacement costs, and forensic cost categories the Court addresses particularly in this Order.

    5.    Conclusion

Based on the foregoing analysis and on the above terms, the Court **RECOMMENDS** that the District Court **GRANT** DE #107 on the stated terms.

* * * * *

The Court issues this Recommended Disposition under 28 U.S.C. § 636(b)(1)(B). The parties should consult the statute and Fed. R. Civ. P. 72(b) for specific appeal rights

and mechanics. Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *Thomas v. Arn*, 106 S. Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 30th day of November, 2015.

Signed By:
*Robert E. Wier*   /s/ REW
United States Magistrate Judge