UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

**CIVIL ACTION NO. 13-366-DLB-REW**

**ACUITY BRANDS, INC. and**                                    **PLAINTIFFS**
**ACUITY BRANDS LIGHTING, INC.**

vs.        **ORDER ADOPTING REPORT AND RECOMMENDATION**

**SHANE BICKLEY, et al.**                                           **DEFENDANTS**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**I.   Introduction**

This matter is before the Court upon the Recommended Disposition (Doc. # 191) of United States Magistrate Judge Robert E. Wier, wherein he recommends that Defendants' Motion to Exclude Evidence (Doc. # 107) be granted in part and denied in part. Specifically, Judge Wier recommends that the Court exclude Plaintiffs' evidence of lost profits,[1] replacement costs and forensic evaluation costs[2] for failure to comply with Federal Rule of Civil Procedure 26. Although Defendants also seek to exclude evidence relating

---

1) Throughout the Recommended Disposition, the term "lost profits" refers to the percentage of Plaintiffs' sales shortfall attributable to the sudden departure of Mike Robinson and Jay Dantzler. (Doc. # 191). Although Plaintiffs seek to recover other types of lost profits (such as lost profits resulting from Defendants' sale of the Big Ass High Bay LED through Plaintiffs' agents and lost profits resulting from Defendants use of Plaintiffs' proprietary data to sell lighting products), these items were not the focus of Defendants' Motion. (Doc. # 107). Accordingly, the Court will use the term "lost profits" in a manner that is consistent with Judge Wier's Recommended Disposition.

2) Plaintiffs retained the services of a forensic computer expert to examine the flash drive that Bickley retained post-employment, as well as Robinson's personal hard drive that he used to backup his work computer shortly before resigning. (Doc. # 142-9).

1

to Plaintiffs' other categories of damages, Judge Wier recommends that the Court deny this request due to inadequate briefing. Plaintiffs have filed Objections (Doc. # 193) to the Recommended Disposition, arguing that evidence relating to replacement costs and forensic evaluation costs should not be excluded. Plaintiffs do not take issue with Judge Wier's treatment of the lost profits evidence. Defendants having submitted their Response in Opposition (Doc. # 195), this matter is now ripe for the Court's review. For reasons set forth below, Judge Wier's Recommended Disposition will be **adopted in full** as the findings of fact and conclusions of law of the Court.

## II.  Discussion

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), a district court judge may refer dispositive matters to a magistrate judge for the preparation of a report and recommendation. The magistrate judge must conduct the necessary proceedings and enter a recommended disposition in a timely manner. Fed. R. Civ. P. 72(b)(1). If a party files objections to that recommended disposition, the district court judge must review the contested portions *de novo* and "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(c).

When a civil action is filed, parties must make certain initial disclosures, including "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a). The disclosing party must "make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature

and extent of injuries suffered." *Id.* Each party must supplement or correct their initial disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e).

If a party "fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The test for exclusion under Rule 37(c) "is very simple: the sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010). "The advisory committee's note to Rule 37(c) strongly suggests that 'harmless' involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003) (quoting *Vance, by and through Hammons v. United States*, No. 98-5488, 1999 WL 455435, at *5 (6th Cir. June 25, 1999) (unpublished table decision)). "The burden is on the potentially sanctioned party to prove harmlessness." *R.C. Olmstead, Inc. v. CU Interface, LLC,* 606 F.3d 262, 272 (6th Cir. 2010).

In his Recommended Disposition, Judge Wier first summarized the parties' protracted discovery efforts. (Doc. # 191 at 12). On January 9, 2014, the parties exchanged initial disclosures. (Doc. # 107-2). In their disclosures, Plaintiffs claimed the following categories of damages:

3

> Actual damages: As discovery has just begun, Plaintiff is still in the process of calculating its actual damages. However, Plaintiff anticipates that this calculation will include (but not be limited to) the cost of identifying, interviewing, hiring and training replacements for Robinson, Dantzler, and any other ABL employee improperly solicited by Defendants; and any lost profits or business suffered by Plaintiff as a result of the departure of Robinson, Dantzler and any other ABL employee improperly solicited by Defendants;
>
> Punitive damages; and
>
> Attorney's fees and costs: As determined after trial.

(*Id.* at 4).

A few months later, Defendants sent interrogatories to Plaintiffs, requesting more detail about their damages, but Plaintiffs responded that they were still in the process of calculating them. (Doc. # 107-3 at 3). By December of 2014, Plaintiffs had designated their Human Resources Manager, Chad Sheffield, as a Rule 30(b)(6) deponent. (Doc. # 107-6). However, when Defendants actually deposed Sheffield, he was unable to testify knowledgeably about damages. (Docs. # 120-17 and 123-3 at 24-42).

On March 11, 2015, Defendants' counsel sent a letter to Plaintiffs' counsel asking for more information about the damages sought. (Doc. # 107-8 at 1-3). Although Plaintiffs amended their initial disclosures two weeks later, they failed to provide further detail on damages. (Doc. # 107-4). Finally, on April 15, 2015, Plaintiffs gave Defendants a twenty-eight page breakdown of damages with supporting materials. (Doc. # 149-2). Discovery closed two days later. (Doc. # 86).

Because discovery was a "hotly contested aspect of this litigation," involving four extensions of time, two motions to compel, a motion to quash and numerous squabbles over confidentiality designations, Judge Wier observed that "[t]he parties have–or should

4

have–thoroughly plowed all relevant discovery ground." (Doc. # 191 at 12). Thus, Plaintiffs should have been able to supplement their disclosures in a timely fashion. He then explained his reasons for recommending preclusion in lieu of less harsh sanctions:

> Here, given the extensiveness of discovery in this case and the defense's inability to probe the relevant damage grounds due to Plaintiffs' eleventh-hour production, a mere fee award or jury advisement would insufficiently account for the Rule 26 and 37 values. No other (b)(2)(A) sanction fits in these circumstances. As the Sixth Circuit has directly told lower courts, in these circumstances, exclusion "is mandatory[.]" *Bessemer*, 596 F.3d at 370. Plaintiffs risked harsh Rule 37 sanctions when they failed to seasonably comply with Rule 26, waiting until the final days (and hours) of a 15-month discovery period to produce the items at issue here.

(*Id.* at 13).

In their Objections, Plaintiffs argue that "such an extreme sanction is not warranted by the facts at hand." (Doc. # 193 at 8). Plaintiffs acknowledge that harmlessness "is the key under Rule 37, not prejudice." *Sommer*, 317 F.3d at 692. Nevertheless, they urge the Court to consider the risk of prejudice to Defendants in determining whether to exclude evidence of replacement costs.[3] Although the Court has considerable doubts about the propriety of Plaintiffs' prejudice inquiry, given the lack of case law to support their position, it will address their arguments out of an abundance of caution.

First, Plaintiffs insist that Defendants cannot claim to be surprised by the origin of these damages because the numbers are "not based on any complex formula, but rather

---

3) The Court recognizes that there is some overlap between the concepts of harmlessness and prejudice. After all, both ask how Plaintiffs' non-compliance with Rule 26 affects Defendants. However, under the harmlessness standard, the exclusion of evidence is mandatory so long as Plaintiffs' error was not an honest mistake and Defendants did not have sufficient knowledge of that evidence. *Bessemer*, 596 F.3d at 370. If prejudice was the key inquiry, exclusion would likely not be mandatory unless Defendants made a showing of prejudice. *See Sommer*, 317 F.3d at 692 (rejecting the plaintiff's argument that the trial court should have allowed a witness to testify because it would not have prejudiced the defendant).

on the straightforward costs [Plaintiffs] incurred to recruit and onboard replacement employees." (*Id.* at 9). Plaintiffs also maintain that they gave Defendants notice of these damages during Sheffield's deposition and provided them with an opportunity to question him about their origin. (*Id.*).

Although Defendants had the opportunity to depose Sheffield, his responses to their damages related questions were indeterminate. (Doc. # 158-1 at 3-15). He indicated that replacement costs would include the direct costs of recruiting and hiring replacements for Robinson and Dantzler, as well as "additional on-boarding costs." (Doc. # 195-6 at 7-8). Because Plaintiffs replaced Robinson with a relatively recent hire named Ed Wentworth, Sheffield suggested that the replacement costs may also include the costs of recruiting and hiring Wentworth's successor. (*Id.*). Sheffield further testified that Plaintiffs' estimated replacement costs were $345,000. However, he failed to break down the costs included in that estimate or provide supporting documentation. (*Id.*). Contrary to Plaintiffs' assertions, his testimony did not give Defendants sufficient notice of the replacement costs sought or afford them an opportunity to explore the basis for these costs in detail. Defendants did not receive any additional information regarding damages until two days before discovery closed. Under these circumstances, the Court finds that Defendants are likely to suffer prejudice from these late disclosures.

Second, Plaintiffs suggest that the Court could eliminate the risk of prejudice to Defendants by "mak[ing] a witness available to testify on any outstanding questions Defendants claim to have with respect to these damages." (Doc. # 193 at 10). They also note that the Court has not yet set a trial date in this matter, so there is time to make arrangements for such a witness. However, Plaintiffs fail to explain *why* the Court should

take such a step. Discovery lasted for fifteen months, during which the parties engaged in a very contentious discovery process. (Doc. # 191 at 12-13). Defendants repeatedly requested further detail regarding Plaintiffs' damages, but they were rebuffed until the eleventh hour. (*Id.*). The Court simply is not inclined to reopen discovery so Plaintiffs can accomplish something that could–and should–have been done well before the discovery deadline. To do so would reward Plaintiffs for their impermissible and unfair brinkmanship.

Plaintiffs also take issue with Judge Wier's recommendation regarding the forensic examination costs. Although Plaintiffs first identified these costs as an item of damages in their Responses to Defendants' Third Set of Discovery Requests, they now attempt to characterize these costs as litigation expenses, which are generally recoverable after trial. Because the discovery rules do not require pretrial disclosure of litigation expenses, Plaintiffs insist that there is no error in the timing of their disclosures.[4]

This argument is a poorly-veiled attempt to escape the consequences of their belated disclosures. As Judge Wier pointed out, Plaintiffs "included a categorical reference to 'costs' in their Rule 26 disclosure," but failed to provide "detailed documentation [until] 6:30 p.m. on the last day of discovery." (Doc. # 191 at 13). Moreover, "Plaintiffs admit that they did not provide unredacted copies of the Watts firm invoices containing claim-relevant information until August 12, 2015, well after the discovery deadline. (*Id.*). If Plaintiffs truly believed that these costs were litigation expenses, then why were they identified as an item of damages? Why did Plaintiffs provide Defendants with any computation of these costs

---

4) Specifically, Plaintiffs argue that the forensic examination costs are recoverable as litigation expenses pursuant to their Ethics Agreement and O.C.G.A. § 13-6-11. The Court need not address these arguments because, as it will explain below, these costs are not properly characterized as litigation expenses.

7

prior to trial? The Court must call a spade a spade. Plaintiffs characterized these forensic examination costs as damages, and because they did not disclose a breakdown of these costs or provide supporting documentation to Defendants in a timely manner, they are precluded from introducing evidence of these damages at trial.

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1)   Magistrate Judge Wier's Report and Recommendation (Doc. # 191) is hereby **ADOPTED IN FULL** as the findings of fact and conclusions of law of the Court;

(2)   Defendants' Motion to Exclude (Doc. # 107) is hereby **GRANTED** as to Plaintiffs' evidence of lost profits, replacement costs and forensic examination costs;

(3)   Defendants' Motion to Exclude (Doc. # 107) is hereby **DENIED** as to Plaintiffs' evidence of other damages.

This 24th day of March, 2016.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\ORDERS\Lexington\2013\13-366 Order Adopting R&R re Mtn to Exclude.wpd